Che Corrington, OSB No. 216151
Email: che@hattislaw.com
Daniel M. Hattis (*pro hac vice* to be submitted)
Email: dan@hattislaw.com
HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650

*Attorneys for Plaintiff
and the Proposed Class*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DAVID WHITT,<br>for himself, as a private attorney general, and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>BEST BUY CO., INC.,<br><br>         Defendant. | Case No. 3:25-cv-761<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE UNLAWFUL TRADE PRACTICES ACT, ORS 646.605 *et seq.***<br><br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff David Whitt, individually, as a private attorney general, and on behalf of all others similarly situated, alleges as follows, on personal knowledge and investigation of his counsel, against Defendant Best Buy Co., Inc. ("Best Buy" or "Defendant"):

## I.    <u>INTRODUCTION AND SUMMARY</u>

1.    Best Buy represents itself as an electronics retailer. Best Buy operates Best Buy retail stores and its website, BestBuy.com, where it advertises, markets, and sells a wide variety of electronic goods throughout Oregon and the United States. This lawsuit concerns only particular products sold by Best Buy that it advertises with false discounts—specifically its TVs and its major appliances, e.g., refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers (collectively, the "Products").

2.    Since at least February 2023, Best Buy has engaged in a massive and consistent false discount advertising scheme both in its retail stores and on its website by advertising perpetual or near-perpetual discounts on the Products. These discounts are taken from Best Buy's advertised reference prices for the Products. Best Buy represents these reference prices to be Best Buy's regular and normal prices for the Products, from which the advertised discounts are calculated.

3.    Best Buy prefaced the reference prices with the word "Was" (e.g., "Was $3,799.99") to further indicate that the higher reference price was Best Buy's previous and regular selling price for the Product. And, in its order confirmation emails, Best Buy describes the higher reference price as the "Reg" price, further demonstrating that Best Buy's intent is for the consumer to understand the reference price to mean Best Buy's regular selling price for the Product. Best Buy's advertised discounts and reference prices are false because Best Buy rarely, if ever, offers the Products at their advertised "Was" or "Reg" reference price.

4.    Best Buy also advertises false limited-time discounts for the Products (e.g., "Offer ends 1/29") to induce consumers to purchase the Products immediately before they supposedly return to the (fictitious) reference price. In reality, the discounts continue past the false "Offer ends" date and <u>never</u> end.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

5.      Best Buy's deceptive pricing scheme is intended to trick consumers into believing that its Products are worth, and have a market value equal to, the inflated reference price, and that the lower advertised sale price represents a special bargain. Best Buy perpetrates this illegal scheme in order to induce consumers to purchase the Products and to charge more for the Products than it otherwise could have charged.

6.      Remarkably, Best Buy has essentially admitted to the gravamen of Plaintiff's allegations in this Complaint. Plaintiff's counsel also represents the plaintiffs in a similar case brought under California law, *Porchia, et al v. Best Buy Co., Inc.*, Case No. 3:25-cv-00134-TLT (N.D. Cal.). On January 23, 2025—just 15 days after Best Buy was served the complaint in *Porchia*, notifying Best Buy of its potential liability for its allegedly illegal pricing scheme—Best Buy suddenly changed the labeling of its ticketed reference prices from "Was" to "Comp. Value" across all of its sales channels, including in its Oregon stores and on the Best Buy website.

7.      Notably, all that Best Buy did was change the "Was" label to the "Comp. Value" label for its ticketed reference prices. No other changes were made; the ticketed reference prices, the "sale" prices, and the "Save" dollar amounts for the products remained the same. Thus, Best Buy has ostensibly admitted that Plaintiff's allegations are correct—that Best Buy did not regularly offer its products at the ticketed "Was" reference price, and that Best Buy's discount advertising was thereby misleading and false.

8.      Meanwhile, even with the new "Comp. Value" label, Best Buy's ticketed reference prices for the Products <u>continue</u> to be inflated, and the advertised discounts <u>continue</u> to be false. Even after adding the new "Comp. Value" label, Best Buy <u>continued</u> to deceptively use the term "Reg" to describe its ticketed reference prices in its order confirmation emails. Best Buy <u>continued</u> to falsely describe its reference prices in the online shopping cart as the "Original Price" for the Products. And Best Buy <u>continued</u> to advertise false limited-time sales for the Products, where the purported discounts in fact continue perpetually past the fake "Offer ends" date.

9.      Moreover, <u>Best Buy's new "Comp. Value" label violates Oregon law</u> because

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Best Buy has failed to clearly and conspicuously identify in the advertisement the origin of the price that Best Buy is comparing to its current, purportedly "sale" price. "Without identifying the comparable item, a consumer has no way of knowing if the price comparison is legitimate or a falsely inflated reference price." *Clark v. Eddie Bauer LLC*, No. 2:20-CV-01106-RAJ, 2025 WL 814924, at *4 (W.D. Wash. Mar. 12, 2025). "Under Oregon's UTPA, [the retailer] has an obligation to provide the origin of a reference price." *Id.* "An opaque reference to a 'comparable value' does meet the UTPA requirement. Nor does a reference on the tag to a comparable value, without support for its basis, reduce the injury [the plaintiff] would suffer. An inflated reference price, regardless of the source, may still cause a consumer such as [the plaintiff] confusion in that she may still believe she is getting a deal when, in fact, she is not." *Id.*

10.     Best Buy's false discount advertising harms consumers like Plaintiff by causing them to pay more than they otherwise would have paid and to buy Products that they otherwise would not have bought. *See Clark v. Eddie Bauer LLC*, 371 Or. 177, 198–99, 532 P.3d 880, 893 (2023) ("[W]hen a person acts in response to the deception by spending money that the person would not otherwise have spent, the person has been injured to the extent of the purchase price as a result of that deception."). Customers do not enjoy the actual discounts Best Buy promises them, and the Products are not in fact worth the amount that Best Buy represents to them. Best Buy's deceptive pricing scheme also artificially increases the demand for the Products and causes all customers, including Plaintiff and Class members, to pay price premiums to Best Buy. *See Bohr v. Tillamook Cnty. Creamery Ass'n*, 373 Or. 343, 368 (2025).

11.     Best Buy's false discount advertising violates the Oregon Unlawful Trade Practices Act (UTPA), ORS 646.605 *et seq*., in numerous ways, as detailed in this Complaint.

12.     Plaintiff brings this lawsuit individually and on behalf of a class of Oregon consumers who purchased from Best Buy one or more Products advertised with a discount since February 2023. Plaintiff seeks, for himself and for each of the Oregon class members, statutory damages or actual damages, whichever is greater. Additionally, Plaintiff, acting as a

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

private attorney general, seeks public injunctive relief to protect the general public by enjoining Best Buy from engaging in the unlawful false advertising scheme alleged herein.

## II.  THE PARTIES

13.     Plaintiff David Whitt is a citizen and resident of the city of Portland, in Multnomah County, Oregon, and is an unsophisticated consumer party.

14.     Defendant Best Buy Co., Inc. ("Best Buy") is a corporation chartered under the laws of Minnesota, with its principal place of business at 7601 Penn Ave S, Richfield, MN 55423. Best Buy Co., Inc., owns and operates over 1,000 Best Buy brick-and-mortar retail stores throughout the United States, including 12 in Oregon. Best Buy Co., Inc., also owns and operates the Best Buy website, bestbuy.com.

## III.  JURISDICTION AND VENUE

15.     **Subject Matter Jurisdiction.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from Best Buy.

16.     **Personal Jurisdiction.** This Court has personal jurisdiction over Best Buy because, without limitation: (1) Best Buy is authorized to do business and regularly conducts business in the Oregon; (2) the claims alleged herein took place in Oregon; and/or (3) Best Buy has committed tortious acts within Oregon (as alleged, without limitation, throughout this Complaint). Best Buy has sufficient minimum contacts with Oregon to render the exercise of jurisdiction by this Court permissible.

17.     **Venue.** Venue is proper pursuant to 28 U.S.C. §1391 because Plaintiff is an Oregon citizen who resides in this District. Plaintiff also made his purchases from the Best Buy website while in his home, which is located in this District.

18.     **Divisional Venue.** The Portland Division is the proper divisional venue under LR 3-2(b). Plaintiff resides in Multnomah County, which is part of the Portland Division. Also, a substantial part of the events or omissions giving rise to the claim occurred in the Portland Division, including without limitation, Plaintiff viewed the Best Buy website and made his

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

purchases from his home in Multnomah County.

IV.    **BEST BUY'S FALSE DISCOUNT ADVERTISING SCHEME**

19.     Best Buy operates Best Buy retail stores and its website, BestBuy.com, where it advertises, markets, and sells a wide variety of electronic goods throughout Oregon and the United States. Best Buy sells Products from national brands, as well as exclusive Products including those under Best Buy's private-label brands.[1]

20.     The prices and discounts on the Best Buy website have been, and continue to be, identical to the prices and discounts in Best Buy retail stores, including those in Oregon.

21.     Since at least February 2023, Best Buy has engaged in a massive false discount advertising scheme in its retail stores and on its website concerning the Products. Specifically, Best Buy advertises perpetual or near-perpetual discounts on the Products. These discounts are taken from Best Buy's advertised ticketed reference prices for the Products, which are presented as Best Buy's own regular selling prices for the Products. However, unbeknownst to its customers, the advertised regular prices are false because the Products are never or almost never offered at the supposed regular price. Best Buy perpetrates this illegal scheme in order to induce consumers to purchase the Products and to increase the amount it can charge for the Products.

22.     Best Buy advertises discounts on its Products on the in-store price placards affixed to the Products, and on its website product list pages and individual product pages. Best Buy typically advertises the discounts by advertising a lower discounted price, next to a purported regular price (the "reference price"). Best Buy also advertises a "Save $xx" dollar amount beside the discounted selling price.

23.     Up to and including January 22, 2025, Best Buy prefaced the reference price in its advertising with the word "Was" (e.g., "Was $3,799.99") to indicate that the higher reference price was Best Buy's previous and regular selling price for the Product.

---

[1]     Both of the Products purchased by Plaintiff Whitt that are the subject of this Complaint were exclusive Best Buy Products under Best Buy's private-label Insignia brand.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

24.     On January 23, 2025—only 15 days after Best Buy was first notified by the plaintiffs in *Porchia* of its potential liability for its allegedly illegal pricing scheme, and in obvious direct response to those allegations—Best Buy suddenly changed the labeling of its ticketed reference prices from "Was" to "Comp. Value" across all of its sales channels, including in its Oregon stores and on the Best Buy website. Notably, all that Best Buy did was change the "Was" label to the "Comp. Value" label for its ticketed reference prices. No other changes were made; the ticketed reference prices, the "sale" prices, and the "Save" dollar amounts for the products remained the same.

25.     For example, below are screenshots of the identical LG Washer (SKU: 6529900) taken before and after the January 23, 2025, change to "Comp. Value" with red boxes added.



26.     As these screenshots reflect, all that Best Buy did was change the "Was" label to the "Comp. Value" label for its ticketed reference prices. No other changes were made. The ticketed reference prices, the purportedly discounted selling price, and the "Save" dollar amounts for its purportedly discounted products remained the same.

27.     Even with the new "Comp. Value" label, Best Buy's ticketed reference prices continue to be inflated, and the advertised discounts continue to be false.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

28.     Even after adding the new "Comp. Value" label, Best Buy <u>continued</u> to falsely describe the higher reference price as the "Reg" price in its order confirmation emails. And Best Buy <u>continued</u> to falsely represent that the reference price was the "Original Price" for the Product (e.g., "Original Price $999.99") in the BestBuy.com online shopping cart.

29.     Also, Best Buy <u>continues</u> to this day to falsely advertise special limited-time "sales." On Best Buy's in-store price placards that are affixed to the Products, Best Buy continues to state, "Offer ends mm/dd" (e.g., "Offer ends 2/26"). Best Buy falsely advertises that its discounts are for a limited time, with a certain end date, in order to induce its customers to purchase the Products immediately so that they do not miss out on the supposed "sale."

30.     Moreover, <u>Best Buy's new "Comp. Value" label violates Oregon law</u> because Best Buy has failed to clearly and conspicuously identify in the advertisement the origin of the price that Best Buy is comparing to its current, purportedly "sale" price. "Without identifying the comparable item, a consumer has no way of knowing if the price comparison is legitimate or a falsely inflated reference price." *Clark v. Eddie Bauer LLC*, No. 2:20-CV-01106-RAJ, 2025 WL 814924, at *4 (W.D. Wash. Mar. 12, 2025). "Under Oregon's UTPA, [the retailer] has an obligation to provide the origin of a reference price." *Id.* "An opaque reference to a 'comparable value' does meet the UTPA requirement. Nor does a reference on the tag to a comparable value, without support for its basis, reduce the injury [the plaintiff] would suffer. An inflated reference price, regardless of the source, may still cause a consumer such as [the plaintiff] confusion in that she may still believe she is getting a deal when, in fact, she is not." *Id.*

31.     Examples of Best Buy's false discount advertising scheme, both in-store and online, are provided below.

32.     **Example 1: LG Refrigerator.** The photo and screenshot at **Figure 1** below demonstrates Best Buy's advertising of false "Was" reference prices, false "sale" prices, false dollar savings, and false "Offer ends" dates for an LG Refrigerator. The top image is a photo taken in a Best Buy store on September 22, 2024, of the in-store price placard for an LG 29.5

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Cu. Ft. 4-Door French Door Refrigerator (SKU No. 6397176). The bottom image is a screenshot of that same LG Refrigerator taken on the Best Buy website that same day.

**Figure 1:     LG 29.5 Cu. Ft. 4-Door French Door Refrigerator** (SKU No. 6397176)

**Best Buy Retail Store – 9/22/2024**



**Best Buy Website – 9/22/2024**



33.    These sale and discount advertisements for the refrigerator were false. The $3,799.99 advertised "Was" reference price was <u>not</u> Best Buy's regular selling price for the LG

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Refrigerator. In fact, the pricing data collected by Plaintiff's counsel shows that in the prior 90 days, Best Buy had <u>never</u> offered the LG Refrigerator at the $3,799.99 advertised "Was" reference price. Instead, Best Buy <u>always</u> offered and sold the refrigerator at a much lower price, typically between $3,199.99 and $3,499.99. Customers did not "Save $600" by purchasing the LG Refrigerator on September 22, 2024.

34.     Best Buy's statement that the discounted price was for a limited time ending on September 25, 2024 was also false. On September 26, 2024 (the day after the sale purportedly ended), Best Buy continued advertising the LG Refrigerator at the same $3,199.99 "discounted" price.

35.     **<u>Example 2: Sony TV.</u>** The below advertising for a Sony TV is another example of Best Buy's false "Was" reference prices, false "sale" prices, false dollar savings, and false "Offer ends" dates. Below at the top of **Figure 2** is an in-store photo taken on September 29, 2024, of the price placard for the Sony 75" Class BRAVIA 3 LED 4K UHD TV (SKU No. 6578582). The bottom image is a screenshot of that same TV taken on the Best Buy website the previous day, September 28, 2024.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**Figure 2:    Sony 75" Class BRAVIA 3 LED 4K UHD TV** (SKU No. 6578582)

**Best Buy Retail Store – 9/29/2024**



**Best Buy Website – 9/28/2024**



36.      These sale and discount advertisements for the TV were false. The $1,299.99 advertised "Was" reference price was <u>not</u> Best Buy's regular selling price for the Sony TV. In fact, the pricing data collected by Plaintiff's counsel shows that in the prior 90 days, Best Buy had <u>never</u> offered the Sony TV at the $1,299.99 advertised "Was" reference price. Instead, Best

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Buy <u>always</u> offered and sold the TV at a much lower price, typically between $949.99 and $999.99. Customers did not "Save $350" by purchasing the TV on September 29, 2024.

37.    Best Buy's statement that the discounted price was for a limited time ending on September 29, 2024 was also false. On September 30, 2024 (the day after the sale purportedly ended), Best Buy continued advertising the Sony TV at the same $949.99 "discounted" price (see the screenshot below).

**Best Buy Website – 9/30/2024**



38.    **Example 3: Whirlpool Washer.** The below advertising for a Whirlpool Washer is another example of Best Buy's false "Was" reference prices, false "sale" prices, and false dollar savings. Below at **Figure 3** is a screenshot of the Whirlpool 5.0 Cu. Ft. Front Load Washer (SKU No. 6313755) taken on the Best Buy website on August 17, 2024.

**Figure 3:    Whirlpool 5.0 Cu. Ft. Front Load Washer** (SKU No. 6313755)

**Best Buy Website – 8/17/2024**



39.    The $1,214.99 advertised "Was" reference price was <u>not</u> Best Buy's regular selling price for the Whirlpool Washer. In fact, the pricing data collected by Plaintiff's counsel shows that in the prior 90 days, Best Buy had <u>never</u> offered the Whirlpool Washer at the

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

$1,214.99 advertised "Was" reference price. Instead, Best Buy <u>always</u> offered and sold the Whirlpool Washer at a much lower price, typically between $939.99 and $1,019.99. Customers did not "Save $195" by purchasing the Whirlpool Washer on August 17, 2024.

40.     **Example 4: LG Dryer.** The below advertising for an LG Dryer is another example of Best Buy's false "Was" reference prices, false "sale" prices, and false dollar savings. Below at **Figure 4** is a screenshot of the LG 7.4 Cu. Ft. Electric Dryer (SKU No. 6529903) taken on the Best Buy website on August 5, 2024.

**Figure 4:     LG 7.4 Cu. Ft. Electric Dryer** (SKU No. 6529903)

**Best Buy Website – 8/05/2024**



41.     The $1,299.99 advertised "Was" reference price was <u>not</u> Best Buy's regular selling price for the LG Dryer. In fact, the pricing data collected by Plaintiff's counsel shows that in the prior 90 days, Best Buy had <u>never</u> offered the LG Dryer at the $1,299.99 advertised "Was" reference price. Instead, Best Buy <u>always</u> offered and sold the LG Dryer at $899.99. Customers did not "Save $400" by purchasing the LG Dryer on August 5, 2024.

42.     **Example 5: KitchenAid Dishwasher.** The below advertising for a KitchenAid Dishwasher is another example of Best Buy's false "Was" reference prices, false "sale" prices, and false dollar savings. Below at **Figure 5** is a screenshot of the KitchenAid 24" Top Control Dishwasher (SKU No. 6423224) taken on the Best Buy website on July 21, 2024.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**Figure 5:    KitchenAid 24" Top Control Dishwasher**  (SKU No. 6423224)

**Best Buy Website – 7/21/2024**



43.     The $1,034.99 advertised "Was" reference price was <u>not</u> Best Buy's regular selling price for the KitchenAid Dishwasher. In fact, the pricing data collected by Plaintiff's counsel shows that in the prior 90 days, Best Buy had <u>never</u> offered the KitchenAid Dishwasher at the $1,034.99 advertised "Was" reference price. Instead, Best Buy <u>always</u> offered and sold the KitchenAid Dishwasher at a much lower price, typically between $799.99 and $849.99. Customers did not "Save $185" by purchasing the KitchenAid Dishwasher on July 21, 2024.

44.     **Example 6: Samsung Range.** The below advertising for a Samsung Range is another example of Best Buy's false "Was" reference prices, false "sale" prices, and false dollar savings. Below at **Figure 6** is a screenshot of a Samsung Bespoke 6.3 Cu. Ft. Range (SKU No. 6568999) taken on the Best Buy website on July 19, 2024.

**Figure 6:    Samsung Bespoke 6.3 Cu. Ft. Range** (SKU No. 6568999)

**Best Buy Website – 7/19/2024**



45.     The $1,889.99 advertised "Was" reference price was <u>not</u> Best Buy's regular selling price for the Samsung Range. In fact, the pricing data collected by Plaintiff's counsel

**HATTIS & LUKACS**
11711 SE 8ᵗʰ St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

shows that in the prior 90 days, Best Buy had <u>never</u> offered the Samsung Range at the $1,889.99 advertised "Was" reference price. Instead, Best Buy <u>always</u> offered and sold the Samsung Range at a much lower price, typically between $1,299.99 and $1,499.99 (and usually at $1299.99). Customers did not "Save $390" by purchasing the Samsung Range on July 19, 2024. To the contrary, counsel's data shows that the $1,499.99 "sale" price was $200 <u>higher</u> than the $1,299.99 price that Best Buy had usually offered the Samsung Range for in the prior 90 days.

46.    Best Buy's false discount advertising for the Products described above is typical and representative of the false discount advertising Best Buy perpetrated for all of its "discounted" Products.

47.    Even after adding the new "Comp. Value" label, Best Buy continued to represent that the higher reference price was Best Buy's previous and regular selling price for the Product by describing the reference price as the "Original Price" (e.g., "Original Price $2,249.99") in the BestBuy.com online shopping cart, under "Order Summary". For example, below is a screenshot of these representations for the Samsung Bespoke 6.3 Cu. Ft. Slide-In Electric Induction Range (SKU No. 6569005) taken on February 14, 2025:

**Best Buy Online Shopping Cart – Order Summary – 2/14/2025**

# Order Summary

| | |
|---|---|
| Original Price | $2,249.99 |
| Savings | -$750.00 |
| Store Pickup | FREE |
| Estimated Sales Tax | $129.37 |
| **Total** | **$1,629.36** |

**Checkout**

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

48.    To this day, during the online checkout process, including on the final order submittal page where the customer clicks "Place Your Order," Best Buy states in bold green font: "**<span style="color:green">You're saving \$xx on your order today!</span>**"

**Best Buy Online Shopping Cart – Order Submittal Page– 1/02/2025**

# Order Summary

**Store Pickup**
Pinole

Ready for pickup Fri, Jan 24.

 Samsung - Bespoke 6.3 Cu. Ft. Slide-In Electric Induction…    **$1,499.99**
Qty 1
Remove

🎁 Add a gift receipt

**Digital Delivery**
customer@gmail.com
Redemption information is emailed and available in your Order Details.

Available soon after receipt of ordered item(s).

 Thrive Market - 30% Off First Order + $60 Gift (New…    **FREE**
Qty 1
Remove

| | |
|---|---|
| Item Subtotal | $1,499.99 |
| Store Pickup | FREE |
| Estimated Sales Tax | $146.25 |

Apply a Best Buy Tax Exempt Account Number ⌄

**<span style="color:green">You're saving $390 on your order today!</span>**

**Total**                **$1,646.24**

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

49.     However, these sale advertisements and promises of savings by Best Buy were false. Best Buy never or almost never offered or sold the Products at the advertised reference price (i.e., the "Was" / "Original" price). Customers did not "Save $xx" by purchasing the Product on that day.

50.     And even with the new "Comp. Value" reference price label that Best Buy introduced on January 23, 2025, Best Buy's ticketed reference prices for the Products continue to be inflated, and the advertised discounts continue to be false.

## V.     PLAINTIFF'S ALLEGATIONS ARE BASED ON HIS COUNSEL'S COMPREHENSIVE INVESTIGATION INTO BEST BUY'S PRACTICES

51.     Plaintiff's allegations concerning Best Buy's false discount advertising practices are based in part on daily screenshots and pricing data compiled from Plaintiff's counsel's own daily scraping of the Best Buy website with a proprietary software program. Plaintiff's counsel also investigated Best Buy's in-store practices by regularly visiting Best Buy retail stores, including in Oregon, Washington, and California.

52.     Counsel's investigation confirms that Best Buy has advertised perpetual or near-perpetual sales on the Products since at least February 2023.

53.     Based on counsel's investigation, Best Buy offers and advertises its Products with identical reference prices and at the same sale prices in both its online (BestBuy.com) and retail store sales channels.

54.     Regarding Best Buy's brick-and-mortar retail stores, counsel's investigation found that Best Buy's in-store advertised discounts, "Was" (and since January 23, 2025, "Comp. Value") reference prices, "Save" dollar amounts, sale prices, and "Offer ends" dates were identical in its retail stores throughout the country, including in its Oregon stores.

55.     Regarding Best Buy's website, counsel's investigation found that the website's advertised discounts, "Was" and "Reg" and "Original" (and since January 23, 2025, "Comp. Value") reference prices, "Save" dollar amounts, and sale prices were presented identically to website visitors regardless of what state the visitor was from, including from Oregon (and

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

meanwhile, these website prices and discounts were identical to BestBuy's in-store prices and discounts).

56.    Best Buy effectively treats its online and in-store sales channels as one and the same. Customers can make purchases through the Best Buy website and pick up the Products in-store. Best Buy also encourages its customers, while shopping in-store, to view Best Buy's website and use Best Buy's smartphone app to view and learn more about the Products.

## VI.    BEST BUY'S FALSE DISCOUNT ADVERTISING SCHEME HARMS CONSUMERS AND VIOLATES OREGON LAW

57.    Decades of academic research has established that the use of reference prices and discount advertising like that utilized by Best Buy materially impacts consumers' behavior. A reference price (e.g., the higher "Was" or "Comp. Value") reference price advertised by Best Buy from which the advertised discounts and savings are calculated) affects a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[2]

---

[2]    *See*, *e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res.

HATTIS & LUKACS
11711 SE 8ᵗʰ St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

58.     When a reference price and corresponding discount is bona fide and truthful, it may help consumers in making informed purchasing decisions. In contrast, consumers are harmed when retailers, such as Best Buy, advertise their products with inflated false reference prices and false discounts. The false reference prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

59.     As a direct and proximate result of Best Buy's false reference prices and false discounts, Plaintiff and Class members were harmed and lost money or property.

60.     <u>First</u>, Plaintiff and Class members were harmed because they would not have purchased the Products at the prices they paid had they known that the discounts were fake. *See Clark v. Eddie Bauer LLC*, 371 Or. 177, 198–99, 532 P.3d 880, 893 (2023) ("[W]hen a person acts in response to the deception by spending money that the person would not otherwise have spent, the person has been injured to the extent of the purchase price as a result of that deception.").

61.     Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

62.     Additionally, just as Best Buy intended, Best Buy's advertising of fake limited-time sales events created a false sense of urgency, which made consumers more likely to make a purchase.

63.     <u>Second</u>, Plaintiff and Class members were harmed because they did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts

---

775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

CLASS ACTION COMPLAINT                          - 19 -

Best Buy represented and promised to them. Plaintiff and Class members did not receive Products that were worth the inflated amount that Best Buy represented to them. The Products did not regularly sell for, and did not have a market value of, the fictitious reference price advertised by Best Buy.

64.     Third, Plaintiff and Class members were harmed because they paid a price premium due to illegitimately inflated demand resulting from Best Buy's deceptive pricing scheme. *See Bohr v. Tillamook Cnty. Creamery Ass'n*, 373 Or. 343, 368 (2025). Best Buy's false discount advertising scheme artificially increases consumer demand for Best Buy's Products, which shifts the demand curve and allows Best Buy to charge more for its Products than it otherwise could have charged (i.e., a price premium) absent the misrepresentations. Best Buy's false advertising scheme enabled Best Buy to charge everyone more for all of the Products by artificially stimulating demand based on false pretenses. *See*, *e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826, 836 (2023) (observing that "numerous empirical studies on the effects of promotions" have shown that promotions cause an "outward shift" in the demand curve (i.e., a price premium), which can be "substantial"). Without the misrepresentations, Best Buy would have had to charge less for the Products in order to enjoy the same level of demand.

65.     Under the price premium theory, a consumer "still experience[s] an economic loss" even if she did not rely on the defendant's misrepresentations and even if she "received exactly what she was expecting at the price she was willing to pay." *Bohr v. Tillamook Cnty. Creamery Ass'n*, 373 Or. 343, 368 (2025).

66.     In addition to harming consumers, the practice of employing false reference prices and false discounts also negatively affects the integrity of competition in retail markets. Best Buy's use of false reference prices constitutes an unfair method of competition and harms honest competitors that sell the same or similar products or otherwise compete in the same market, but who (unlike Best Buy) are advertising valid and accurate reference prices and true "sales." Businesses who play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

67.     Federal and state courts have articulated the abuses that flow from false discount advertising practices. For example, the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

68.     Oregon law prohibits false reference pricing practices such as those perpetrated by Best Buy.

69.     Oregon's Unlawful Trade Practices Act (UTPA) broadly prohibits "mak[ing] false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." ORS 646.608(1)(j).

70.     Additionally, the UTPA prohibits sellers from using misleading price comparisons to advertise their products. ORS 646.608(ee) (citing ORS 646.883 and ORS 646.885).

71.     The UTPA prohibits price comparison advertising which uses terms such as "regular," "reduced," "sale," "originally," and "formerly" where the reference price was not in fact the retailer's own former price for the product. ORS 646.885(1); ORS 646.608(ee).

72.     The UTPA also prohibits price comparison advertising which uses terms such as "discount," "____ percent discount," "$____ discount," "____ percent off," and "$____ off" where the reference price was not in fact the retailer's own former price for the product. ORS 646.885(2); ORS 646.608(ee).

73.     In order for a reference price to be a lawful former price, it must be a price at which the seller, in the regular course of its business, made good-faith sales of the same or similar product or offered in good faith to make sales of the same or similar product within the preceding 30 days or on a date which is identified in the advertisement. OAR 137-020-0010(6)(a).

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

74.     Also, the UTPA explicitly prohibits a seller from advertising a price comparison unless "[t]he seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price." ORS 646.883(1); ORS 646.608(ee).

75.     Compliance with ORS 646.608(1)(j) and OAR 137-020-0010 "is established based on facts provable by the seller." ORS 646.883(2).

76.     As alleged in detail above, Best Buy's advertised reference prices and discounts violate Oregon law because, based on the investigation of Plaintiff's counsel, Best Buy's advertised reference prices are inflated and fictitious, and Best Buy's advertised dollars-off discounts are false.

77.     As alleged in detail above, Best Buy uses misleading former price comparisons. For example, Best Buy described its reference prices with the terms "Was," "Original Price," and "Reg," which are viewed under Oregon law and by reasonable consumers to refer to Best Buy's own former regular prices for those Products. However, these reference prices were false because Best Buy in fact always or nearly always offered the Products at lower "discounted" prices.

78.     Also, as alleged in detail above, Best Buy uses terms such as "save $___" even though the Products are not actually offered at a discount as compared to Best Buy's own former regular prices.

79.     Additionally, since Best Buy changed the "Was" label to the "Comp. Value" label for its ticketed reference prices on January 23, 2025, Best Buy has failed to clearly and conspicuously identify in the advertisement the origin of the price that Best Buy is comparing to its current, purportedly "sale" price—in violation of the explicit provisions of the UTPA.

80.     Indeed, a federal court recently held that simply adding the phrase "Comparable Value" next to the ticketed prices does not make the retailer's perpetual discount advertising scheme suddenly lawful under the UTPA. "Without identifying the comparable item, a consumer has no way of knowing if the price comparison is legitimate or a falsely inflated reference price." *Clark v. Eddie Bauer LLC*, No. 2:20-CV-01106-RAJ, 2025 WL 814924, at *4

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

(W.D. Wash. Mar. 12, 2025). "Under Oregon's UTPA, [the retailer] has an obligation to provide the origin of a reference price." *Id.* "An opaque reference to a 'comparable value' does meet the UTPA requirement. Nor does a reference on the tag to a comparable value, without support for its basis, reduce the injury [the plaintiff] would suffer. An inflated reference price, regardless of the source, may still cause a consumer such as [the plaintiff] confusion in that she may still believe she is getting a deal when, in fact, she is not." *Id.*

81.  The false reference price and false discount representations by Best Buy were material to the decisions of consumers to purchase each Product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant savings if they purchased these Products, and consumers purchased these Products on the basis of these representations in order to enjoy the purported discounts.

82.  Best Buy's marketing plan is to deceive its customers into believing that the Products are worth, and have a market value equal to, the inflated reference price, and that the lower advertised sale price represents a special bargain.

83.  The false or misleading nature of Best Buy's reference prices and discounts was, at all relevant times, masked or concealed such that an ordinary consumer exercising reasonable care under all the circumstances would not have known or discovered their false or misleading nature.

84.  As a direct and proximate result of Best Buy's acts and omissions, all Oregon consumers who have purchased a Product from Best Buy that was advertised with a reference price or purported discount have been harmed and have suffered ascertainable losses.

85.  Best Buy continues to advertise false reference prices and false discounts to this day. There is no reason to believe that Best Buy will voluntarily and permanently cease its unlawful practices. Moreover, in the unlikely event that Best Buy were to cease its unlawful practices, Best Buy can and is likely to re-commence these unlawful practices.

86.  In acting toward consumers and the general public in the manner alleged herein, Best Buy acted with and was guilty of malice, fraud, and oppression and acted in a manner with a strong and negative impact upon Plaintiff, the Class, and the public.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## VII.    PLAINTIFF'S FACTUAL ALLEGATIONS

87.    Plaintiff David Whitt is, and at all relevant times has been, a citizen and resident of the city of Portland, in Multnomah County, Oregon.

88.    Mr. Whitt is a victim of Best Buy's false discount advertising scheme.

89.    As detailed above, Best Buy's false discounting practices have been ongoing since at least February 2023. During this time, Mr. Whitt has purchased several Products from Best Buy which were advertised with a false reference price and a false discount.

90.    For example, on October 12, 2024, Mr. Whitt visited the Best Buy website to shop for a TV.

91.    While browsing the Best Buy website, Mr. Whitt viewed pricing and discount representations similar to those described in detail above.

92.    For example, Mr. Whitt viewed webpages advertising the Insignia – 70" Class F50 Series LED 4K UHD Smart Fire TV, SKU No. 6580446 (the "TV"). On the webpages, Best Buy advertised that the TV was "A BEST BUY Brand"; that the TV was currently on sale for $369.99; that the TV "Was $499.99"; and that the customer would "Save $130" by buying the TV now. Best Buy also advertised that the "Deal ends tomorrow."

93.    Below is a screenshot of one of the product webpages viewed by Mr. Witt. The screenshot was taken as part of counsel's investigation.



**Best Buy Website – 10/12/2024**



94.    Relying on Best Buy's representations, Mr. Whitt reasonably believed that the TV was normally offered and sold by Best Buy for the $499.99 "Was" price. Mr. Whitt reasonably believed that the TV was therefore worth and had a market value of $499.99.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Mr. Whitt reasonably believed that the advertised sale price of $369.99 represented a special and unusual bargain, where Best Buy was temporarily offering the TV at $130 off the regular and normal selling price of $499.99. Mr. Witt also reasonably believed, as Best Buy advertised, that the "deal" ended the next day, on October 13, at which point, the TV would return to its "Was" price of $499.99. Relying on Best Buy's representations, Mr. Whitt purchased the TV.

95.     However, Best Buy's pricing representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Mr. Whitt, according to pricing data collected by his counsel, the $499.99 advertised "Was" reference price was not Best Buy's regular selling price for the TV.

96.     In fact, the pricing data collected by counsel shows that Best Buy had first introduced and offered the TV for sale on August 30, 2024. The pricing data shows that from the very first day Best Buy had offered the TV, Best Buy had never offered the TV at the $499.99 advertised regular price and had instead always offered and sold the TV at a much lower price, typically between $359.99 and $399.99. Additionally, the TV did not return to its "Was" price of $499.99 after October 13 (contrary to the "Deal ends tomorrow" advertising viewed by Mr. Whitt); instead, Best Buy continued offering the TV at a much lower price.

97.     The TV was not in fact worth the $499.99 price that Best Buy had led him to believe.

98.     As another example, on September 18, 2024, Mr. Whitt visited the Best Buy website to shop for a refrigerator.

99.     While browsing the Best Buy website, Mr. Whitt viewed pricing and discount representations similar to those described in detail above.

100.     For example, Mr. Whitt viewed webpages advertising the Insignia - 18.6 Cu. Ft. Bottom Freezer Refrigerator with ENERGY STAR Certification - Stainless Steel, SKU No. 6467055 (the "Refrigerator"). On the webpages, Best Buy advertised that the Refrigerator was "A BEST BUY Brand"; that the Refrigerator was currently on sale for $679.99; that the Refrigerator "Was $799.99"; and that the customer would "Save $120" by buying the Refrigerator now.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

101.    Below is a screenshot of one of the webpages viewed by Mr. Witt. The screenshot was taken as part of counsel's investigation.

**Best Buy Website – 9/18/2024**



102.    Relying on Best Buy's representations, Mr. Whitt reasonably believed that the Refrigerator was normally offered and sold by Best Buy for the $799.99 "Was" price. Mr. Whitt reasonably believed that the Refrigerator was therefore worth and had a market value of $799.99. Mr. Whitt reasonably believed that the advertised sale price of $679.99 represented a special and unusual bargain, where Best Buy was temporarily offering the Refrigerator at $120 off the regular and normal selling price of $799.99. Relying on Best Buy's representations, Mr. Whitt purchased the Refrigerator.

103.    However, Best Buy's pricing representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Mr. Whitt, according to pricing data collected by his counsel the $799.99 advertised "Was" reference price was <u>not</u> Best Buy's regular selling price for the Refrigerator. In fact, the pricing data collected by counsel shows that since July 12, 2024, Best Buy had <u>never</u> offered the Refrigerator at the $799.99 advertised regular price and had instead <u>always</u> offered and sold the Refrigerator at the same $679.99 purported "sale" price.

104.    The Refrigerator was not in fact worth the $799.99 price that Best Buy had led him to believe.

105.    Best Buy's advertised reference prices and discounts were material misrepresentations and inducements to Mr. Whitt's purchases.

HATTIS & LUKACS
11711 SE 8ᵗʰ St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

106.    Mr. Whitt reasonably relied on Best Buy's material misrepresentations regarding the advertised reference prices and discounts. If Mr. Whitt had known the truth, he would not have purchased the Products at the prices he paid.

107.    As a direct and proximate result of Best Buy's acts and omissions, Mr. Whitt was harmed, suffered an injury-in-fact, and lost money or property.

108.    When Mr. Whitt shopped at Best Buy, he had no suspicion that Best Buy's advertised reference prices and discounts were false. Best Buy gave Mr. Whitt no reason to be suspicious. Mr. Whitt first learned of Best Buy's false advertising scheme in April 2025 when his attorneys told him about Best Buy's unlawful conduct and informed him that he was a victim of the scheme. Prior to this, Mr. Witt did not know or suspect that Best Buy was engaging in a false discount advertising scheme or that he had been a victim of the scheme.

109.    Mr. Whitt has a legal right to rely now, and in the future, on the truthfulness and accuracy of Best Buy's representations regarding the advertised reference prices and discounts for its Products.

110.    Mr. Whitt faces an imminent threat of future harm. Mr. Whitt would purchase Products from Best Buy again in the future if he could have confidence regarding the truth of Best Buy's price and discount representations. But without an injunction, Mr. Whitt has no realistic way of knowing which, if any, of Best Buy's reference prices, discounts, and sales for the Products are true.

111.    Mr. Whitt will be harmed if, in the future, he is left to guess as to whether Best Buy is providing a legitimate sale or not, and whether its Products are actually worth the amount that Best Buy is representing.

112.    If Mr. Whitt were to purchase Products again from Best Buy without Best Buy having changed its unlawful and deceptive conduct alleged herein, Mr. Whitt would be harmed on an ongoing basis and/or would be harmed once or more in the future.

113.    The deceptive practices and policies alleged herein, and experienced directly by Mr. Whitt, are not limited to any single Product. Rather, Best Buy's deceptive advertising and

sales practices, which advertise and state false reference prices and false dollar-off discounts, were, and continue to be, systematic and pervasive across Best Buy's Products.

## CLASS ALLEGATIONS

114.    Plaintiff brings this lawsuit on behalf of himself and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

115.    **Class Definition:** Plaintiff seeks to represent the following Class:

> **All persons who, while in Oregon, purchased from Best Buy one or more Products[3] advertised at a discount on or after February 2, 2023.**

116.    Specifically excluded from the Class are Best Buy and any entities in which Best Buy has a controlling interest, Best Buy's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

117.    **Application of the Discovery Rule.** The applicable limitations period and corresponding class period extends back to the date on which Best Buy first engaged in its unlawful false discounting practices based on the discovery rule explicitly provided for in the UTPA. ORS 646.638(6). Based on the investigation of Plaintiff's counsel, Best Buy has engaged in its unlawful false discounting practices since at least February 2, 2023.

118.    Plaintiff and the members of the Class did not know, and could not have reasonably known, about Best Buy's unlawful conduct. "[A] cause of action does not accrue under the discovery rule until the claim has been discovered or, in the exercise of reasonable care, should have been discovered." *FDIC v. Smith* 328 Or. 420, 428, 980 P.2d 141 (1999); *see also Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 278 (2011) ("The statute of limitations begins to run when the plaintiff knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a substantial possibility that each of the elements of a claim exists.").

---

[3]    "Products" are defined in this Complaint as TVs and major appliances, such as refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

119.    When Mr. Whitt shopped at Best Buy, he had no suspicion that Best Buy's advertised reference prices and discounts were false. Best Buy gave Mr. Whitt no reason to be suspicious. Mr. Whitt first learned of Best Buy's false advertising scheme in April 2025 when his attorneys told him about Best Buy's unlawful conduct and informed him that he was a victim of the scheme. Prior to this, Mr. Witt did not know or suspect that Best Buy was engaging in a false discount advertising scheme or that he had been a victim of the scheme. *See Esgate v. Home Depot U.S.A., Inc.*, No. 6:24-CV-01806-MTK, 2025 WL 1207217, at *7–*8 (D. Or. Apr. 24, 2025) (holding that the plaintiff's UTPA claim did not begin to accrue until the date his lawyers informed him that he was likely a victim of the defendant's false discount advertising scheme).

120.    Likewise, Class members would not know or suspect that Best Buy was engaging in this deceptive pricing scheme. Reasonable consumers presume that retailers are not engaging in unlawful conduct. Reasonable consumers would believe that Best Buy's pricing and discount representations were true. Reasonable consumers would believe that Best Buy's reference prices (1) represent the regular and normal prices that consumers had to pay for the Products; (2) represent the recent former prices of the Products (that is, the prices at which the Products were actually offered for sale before the limited-time offer went into effect); and (3) represent the prices that consumers will have to pay for the Products when the sale ends. Reasonable consumers would believe that Best Buy's advertised discounts represent a reduction from the regular and recent former prices of the Products in the amounts advertised.

121.    Moreover, Plaintiff and the Class could not have, with the exercise of reasonable diligence, discovered Best Buy's false advertising scheme because, by design, its very nature is hidden and impossible for a reasonable consumer to discover.

122.    "The only way for a person to know that [a retailer's] advertised discounts were false is for the person to know [the retailer's] true historical selling prices for the products he or she purchased." *Clark v. Eddie Bauer LLC*, No. 2:20-CV-01106-RAJ, 2025 WL 814924, at *3 (W.D. Wash. Mar. 12, 2025). Consumers who shopped at Best Buy would have no way of knowing, with the exercise of reasonable diligence, the true daily price histories and past

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

selling prices for the Products they viewed and purchased. Consumers would have no way to know, with the exercise of reasonable diligence, that the advertised reference prices were fictitious and inflated and that the advertised dollars-off savings were false.

123.    Plaintiff's counsel only found evidence for Best Buy's deceptive pricing scheme by conducting an extensive and expensive investigation that no reasonable person would conduct.

124.    **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff does not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises tens of thousands of individuals. The exact number and identities of Class members are contained in Best Buy's records and can be easily ascertained from those records.

125.    **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a.    Whether the alleged conduct of Best Buy violates the Oregon Unlawful Trade Practices Act, ORS 646.605 *et seq.*;

b.    Whether Best Buy's alleged unlawful conduct pled herein were willful violations of ORS 646.608;

c.    Whether Best Buy engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged herein which have been declared unlawful by ORS 646.608;

d.    Whether Plaintiff and the Class have suffered ascertainable losses as a result of Best Buy's unlawful conduct;

e.    Whether Best Buy should be ordered to pay statutory damages to Plaintiff and to each Class member; and

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

f.      Whether Best Buy should be enjoined from engaging in the unlawful conduct alleged herein.

126.    **Typicality.** Plaintiff's claims are typical of Class members' claims. Plaintiff and Class members all sustained injury as a direct result of Best Buy's standard practices and schemes, bring the same claims, and face the same potential defenses.

127.    **Adequacy.** Plaintiff and his counsel will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests and is committed to representing the best interests of the Class members. Moreover, Plaintiff has retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

128.    **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Best Buy's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

129.    By its conduct and omissions alleged herein, Best Buy has acted and refused to act on grounds that apply generally to the Class members, such that declaratory relief is appropriate respecting the Class as a whole.

130.    Best Buy is primarily engaged in the business of selling goods. Each claim alleged by Plaintiff arises out of a communication related to Best Buy's sale of goods.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## CAUSES OF ACTION

### COUNT I
### Violation of the Oregon Unlawful Trade Practices Act
### Oregon Revised Statutes § 646.605 *et seq.*

131.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

132.    Plaintiff brings this claim in his individual capacity, in his capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

133.    The Oregon Unlawful Trade Practices Act (the "UTPA"), ORS 646.605 *et seq.*, is Oregon's principal consumer protection statute. As the Supreme Court of Oregon has explained:

> The civil action authorized by ORS 646.638 is designed to encourage private enforcement of the prescribed standards of trade and commerce in aid of the act's public policies as much as to provide relief to the injured party. This is apparent from the section itself. It allows recovery of actual damages or $200, whichever is greater, plus punitive damages, costs, and attorney fees. . . . The evident purpose is to encourage private actions when the financial injury is too small to justify the expense of an ordinary lawsuit . . . . the legislature was concerned as much with devising sanctions for the prescribed standards of trade and commerce as with remedying private losses, and that such losses therefore should be viewed broadly. The private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute.

*Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 134–36, 690 P.2d 488, 493–94 (1984).

134.    Under the UTPA, "a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater. The court or the jury may award punitive damages, and the court may provide any equitable relief the court considers necessary or proper." ORS 646.638(1). The court is also specifically authorized to order injunctive relief "as may be necessary to ensure cessation of unlawful trade practices." ORS 646.636.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

135.    The UTPA also permits a plaintiff to maintain a class action and recover the same remedies on behalf of each class member, including statutory damages. ORS 646.638(8)(a)-(c).

136.    Best Buy is a "person," as defined by ORS 646.605(4).

137.    Best Buy is engaged in "trade" and "commerce" in Oregon by advertising and offering for sale goods with reference prices and discounts to Oregon consumers on its website and in its stores that directly or indirectly affect the people of Oregon, as defined by ORS 646.605(8).

138.    Best Buy's Products are "goods" that are or may be obtained primarily for personal, family or household purposes, as defined by ORS 646.605(6).

139.    Plaintiff and Class members purchased Best Buy's goods for personal, family, and/or household purposes.

140.    The unlawful methods, acts and practices pled herein were committed in the course of Best Buy's business. ORS 646.608(1).

141.    Best Buy's unlawful methods, acts and practices pled herein were "willful violations" of ORS 646.608 because Best Buy knew or should have known that its conduct was a violation, as defined by ORS 646.605(10).

142.    Best Buy's representations of reference prices and discounts are "advertisements" as defined by ORS 646.881(1).

143.    Best Buy's use of reference prices and advertised discounts are "price comparisons" as defined by ORS 646.881(2).

144.    Best Buy's reference prices (i.e., the "Was", "Reg" or "Original" price) for its Products are representations of Best Buy's own "former prices," or in the case of labeled introductory advertisements are representations of Best Buy's "future prices," as defined by ORS 646.885.

145.    By its conduct and omissions alleged herein, Best Buy has committed unlawful methods, acts or practices, including without limitation:

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

a.      Best Buy made false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions. ORS 646.608(1)(j);

b.      Best Buy advertised price comparisons that violate ORS 646.608(1)(j) by advertising reference prices that do not comply with one of the exceptions enumerated in OAR 137-020-0010(6)(a)-(g);

c.      Best Buy advertised former prices that were not prices at which Best Buy, in the regular course of its business, made good-faith sales of the same or similar products or offered in good faith to make sales of the same or similar products within the preceding 30 days or on a date which is identified in the advertisement. OAR 137-020-0010(6)(a); ORS 646.608(1)(j);

d.      Best Buy engaged in price comparison advertising in violation of ORS 646.883(1) by failing to clearly and conspicuously identify in the advertisement the origin of the price that Best Buy was comparing to Best Buy's current price;

e.      Best Buy engaged in price comparison advertising in violation of ORS 646.883(2) by failing to comply with ORS 646.608(1)(j) and ORS 646.608(4). ORS 646.608(ee);

f.      Best Buy engaged in price comparison advertising in violation of ORS 646.885(1) by using terms such as "regular," "reduced," "sale," "usually," "originally," "clearance," "liquidation," and/or "formerly" where the reference price was not in fact Best Buy's own former price, or in the case of introductory advertisements, was not Best Buy's future price. ORS 646.608(ee);

g.      Best Buy engaged in price comparison advertising in violation of ORS 646.885(2) by using terms such as "___ percent off," "$___ off," "___ percent discount" and/or "$___ discount" where the reference price was not in fact Best Buy's own former price, or in the case of introductory advertisements, was not Best Buy's future price. ORS 646.608(ee); and

h.      Best Buy engaged in other unfair or deceptive conduct in trade or commerce, as described herein. ORS 646.608(1)(u); ORS 646.608(4).

CLASS ACTION COMPLAINT                - 34 -

146.    Best Buy engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged herein which have been declared unlawful by ORS 646.608.

147.    With respect to any omissions, Best Buy at all relevant times had a duty to disclose the information in question because, inter alia: (a) Best Buy had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) Best Buy concealed material information from Plaintiff and Class members; and (c) Best Buy made partial representations, which were false and misleading absent the omitted information.

148.    Best Buy's misrepresentations and nondisclosures deceive and have a tendency to deceive a reasonable consumer and the general public.

149.    Best Buy's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

150.    As a direct, substantial, and/or proximate result of Best Buy's unlawful conduct, Plaintiff and Class members were harmed, suffered injury-in-fact, and suffered ascertainable losses of money or property.

151.    Plaintiff and Class members reasonably relied on Best Buy's material misrepresentations and would not have purchased Best Buy's Products at the prices that they paid had they known the truth.

152.    Plaintiff and Class members did not receive the benefits of their bargain. Plaintiff and class members did not enjoy the actual discounts that Best Buy represented and promised to them. Plaintiff and Class members did not receive Products that were worth the inflated amount that Best Buy represented to them; the Products did not regularly sell for, and were not actually worth, the fictitious reference price advertised by Best Buy.

153.    By its conduct and omissions alleged herein, Best Buy caused the demand for its Products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to Best Buy. Put differently, as a result of its misrepresentations, Best Buy has been able to charge a price premium for its Products to everyone that it would not be able to charge absent the misrepresentations. Without the

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

misrepresentations, Best Buy would have had to charge less for the Products in order to enjoy the same level of demand.

154.    Plaintiff seeks for himself and each member of the Class: (1) the greater of statutory damages or actual damages; (2) punitive damages; (3) appropriate equitable relief; and (4) attorneys' fees and costs. ORS 646.638(3); ORS 646.638(8).

155.    **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the UTPA to protect the general public from Best Buy's false advertisements, misrepresentations, and omissions.

156.    The UTPA specifically authorizes the court to order injunctive relief "as may be necessary to ensure cessation of unlawful trade practices." ORS 646.636.

157.    When a consumer seeks to enjoin an unlawful trade practice that affects the general public, such as false advertising, courts refer to that type of injunctive relief as "public injunctive relief," and refer to the consumer as a "private attorney general." *See*, *e.g.*, *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 393 P.3d 85, 90 (2017) ("[P]ublic injunctive relief … is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public."); *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 988 P.2d 67, 74 (1999) (referring to consumers seeking public injunctive relief as "private attorneys general"); *Scott v. Cingular Wireless*, 160 Wash. 2d 843, 161 P.3d 1000, 1006 (2007) ("Private citizens act as private attorneys general in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce. Consumers bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests."); *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021) (explaining that the "paradigmatic example" of public injunctive relief is "an injunction against the use of false advertising"); *Snarr v. HRB Tax Grp., Inc.*, 839 F. App'x 53, 55 (9th Cir. 2020) (explaining that "relief which enjoins deceptive practices directed at the public is public injunctive relief").

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

158.    Best Buy's misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Best Buy absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining Best Buy from committing the unlawful practices alleged herein.

159.    Best Buy's addition, starting on January 23, 2025, of the phrase "Comp. Value" next to the ticketed reference prices was simply a continuation of the same false discount advertising scheme. And, under the UTPA, Best Buy "has an obligation to provide the origin of a reference price. An opaque reference to a 'comparable value' does meet the UTPA requirement. Nor does a reference on the tag to a comparable value, without support for its basis, reduce the injury [the plaintiff] would suffer. An inflated reference price, regardless of the source, may still cause a consumer such as [the plaintiff] confusion in that she may still believe she is getting a deal when, in fact, she is not." *Clark v. Eddie Bauer LLC*, No. 2:20-CV-01106-RAJ, 2025 WL 814924, at *4 (W.D. Wash. Mar. 12, 2025).

160.    The balance of the equities favors the entry of permanent public injunctive relief against Best Buy. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Best Buy's ongoing false advertising absent the entry of permanent public injunctive relief against Best Buy.

161.    Plaintiff lacks an adequate remedy at law to prevent Best Buy from engaging in the unlawful practices alleged herein. Plaintiff would shop for Products at Best Buy again if he could have confidence regarding the truth of Best Buy's prices and the value of its Products. Plaintiff will be harmed if, in the future, he is left to guess as to whether Best Buy is providing a legitimate sale or not, and whether Best Buy's Products are actually worth the amount that Best Buy is representing.

162.    Also, monetary damages are not an adequate remedy at law for <u>future</u> harm. *Clark v. Eddie Bauer LLC*, No. 21-35334, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages will not prevent Best Buy from engaging in its unlawful conduct. Second,

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what Product(s) Plaintiff may want or need in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts may be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by Best Buy.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and the proposed Class, requests that the Court order relief and enter judgment against Best Buy as follows:

1.      Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiff and his counsel to represent the Class;

2.      Declare that the discovery rule, pursuant to, without limitation, ORS 646.638(6), applies to extend any applicable limitations period and the corresponding class period back to the date Best Buy first engaged in the unlawful conduct alleged herein (which based on counsel's investigation, is February 2, 2023);

3.      Declare that Best Buy's conduct alleged herein violates the UTPA;

4.      Order Best Buy to pay statutory damages or actual damages, whichever is greater, to Plaintiff and each of the Class members;

5.      Order Best Buy to pay punitive damages to Plaintiff and each of the Class members in an amount to be determined at trial;

6.      Permanently enjoin Best Buy from engaging in the unlawful conduct alleged herein;

7.      Order that Best Buy maintain sufficient records for each daily Product[4] offering in its retail stores and on its website for at least two years from the date of each advertisement and/or offer for sale of the Product, for auditing purposes to ensure compliance with the

---

[4]      "Products" are defined in this Complaint as TVs and major appliances, such as refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

ordered injunctive relief, including: (1) the advertised reference price for each Product; (2) the offer price and/or net selling price of each Product; (3) any discount percentage and/or any other discount that was advertised and/or applicable to each Product; and, (4) for any Product advertised with a "Comp. Value" reference price, the basis of that "Comp. Value" price including the date offered, the other retailer name (if applicable), the similar product (if applicable), and the selling price(s) of the compared product(s);

8.      Retain jurisdiction to monitor Best Buy's compliance with the permanent injunctive relief;

9.      Order any other equitable relief the Court deems appropriate;

10.     Order Best Buy to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

11.     Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Date: May 7, 2025.

Presented by:

HATTIS & LUKACS

By: _Che Corrington_
Che Corrington

Che Corrington, OSB No. 216151
Email: che@hattislaw.com
Daniel M. Hattis (*pro hac vice* to be submitted)
Email: dan@hattislaw.com
HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650

*Attorneys for Plaintiff*
*and the Proposed Class*

CLASS ACTION COMPLAINT                - 39 -

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com